# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    and

**KAYLA MARR (FORMERLY WALLACE),
INDIVIDUALLY AND AS NEXT OF
FRIEND OF HER MINOR CHILDREN,
A.M. AND L.M.,**

    **Plaintiff-Intervenor,**

    v.                                 Case 1:14-cv-2880-JDB-EGB

**JEFFREY H. WYGUL,**

    **Defendant.**

### ORDER DENYING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### AND GRANTING PLAINTIFF-INTERVENOR'S MOTION
### FOR SUBSTITUTION

On November 10, 2014, Plaintiff, United States of America, initiated suit against Defendant, Jeffery Wygul, for violations of the Fair Housing Act ("FHA"). (Docket Entry ("D.E.") 1.) Plaintiff-Intervenor, Kayla Marr, requested permission to intervene in the case on April 27, 2015, which the Court granted on April 29, 2015. (D.E. 17, 19.) On April 7, 2016, Marr moved to substitute Bankruptcy Trustee Michael Tabor as the real party in interest, which Wygul opposed. (D.E. 65, 68.) On April 20, 2016, Defendant filed a motion for summary judgment. (D.E. 69.) Plaintiff and Plaintiff-Intervenor both filed their memoranda in opposition

1

to summary judgment on May 23, 2016. (D.E. 78, 76.) For the following reasons, Marr's motion to substitute is hereby GRANTED, and Wygul's motion for summary judgment is DENIED.

*Background*

The following material facts are undisputed for purposes of this action. In December 2010, Marr saw an advertisement for the rental of a single-family home and spoke to Wygul, the manager of the property, about viewing the dwelling. (D.E. 1 at ¶¶ 8-9.) Defendant's mother, Faye Wygul, was the owner of the house. (D.E. 69-2 at 2.) In late January 2011, Wygul showed Marr the property, and she agreed to rent the home for herself and her two children, A.M. and L.M. (D.E. 1 at ¶ 9.) Marr entered into an oral agreement to begin renting the property on the first of February 2011. (*Id.*) She then signed a month-to-month lease for the home, placing a one month security deposit on January 27, 2011. (*Id.* at 3) As the property was not ready for occupancy on February 1, Marr waited until on or about February 9, 2011, to move in and a reduced rent for February was negotiated. (*Id.* at ¶ 10.) A question of fact exists regarding the payment of the March 2011 rent. (*See* D.E. 69-2 at 4; D.E. 78-2 at 6.) In early April 2011, Wygul served an eviction notice on Marr, and she and her children vacated the premises on May 5, 2011. (D.E. 1 at ¶ 12.)

On November 30, 2011, Marr filed a complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that Wygul discriminated against her and her children in the rental of the property on the basis of sex. (*Id.* at ¶ 13.) The Secretary of HUD "conducted and completed an investigation, attempted conciliation without success, and prepared a final investigative report." (*Id.* at ¶ 14.) Based upon the information learned through the investigation, the Secretary determined that reasonable cause existed to believe that illegal

discriminatory housing practices occurred. (*Id.*) On September 29, 2014, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Defendant with engaging in discriminatory conduct on the basis of sex in violation of the FHA. (*Id.*) On October 9, 2014, pursuant to 42 U.S.C. § 3612(a), Marr elected to have the claims asserted in HUD's charge resolved in a civil action. (*Id.* at ¶ 15.) An administrative law judge issued a notice of election on October 10, 2014, and terminated the administrative proceeding regarding the HUD complaint. (*Id.* at ¶ 16.) Subsequent to the notice of election, the Secretary of HUD authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o). (*Id.* at ¶ 17.)

*Standard*

Federal Rule of Civil Procedure 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 578 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). It is not to "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth

specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). The nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

*Analysis*

1. Judicial Estoppel

Defendant first asserts that Plaintiff-Intervenor's claims are barred by the doctrine of judicial estoppel for her failure to include any claims against him in her prior bankruptcy filing. (D.E. 69 at 2.) The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The Sixth Circuit has previously described judicial estoppel as a rule against "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," or "hav[ing] [one's] cake and eat[ing] it too." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005). Judicial estoppel seeks "to preserve 'the integrity of the courts,'" *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002), by "generally prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase," *New Hampshire*, 532 U.S. at 749. No "inflexible prerequisites" exist, however, for judicial estoppel. *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314-15 (6th Cir. 2013).

4

The Sixth Circuit has routinely applied the doctrine to bar employment related claims not disclosed in prior bankruptcy proceedings where: "(1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence." *Id.*; *see White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 487 (6th Cir. 2010). Applying judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests. *Kimberlin*, 520 F. App'x at 314; *see White*, 617 F.3d at 479. In regards to the mistake-or-inadvertence prong, the Sixth Circuit considers whether "(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *Kimberlin*, 250 F. App'x at 315. The "absence of bad faith" inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim. *Id.*; *see Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012) (declining to apply judicial estoppel where trustee's affidavits acknowledging awareness of suit presented a factual dispute regarding whether the debtor's omission was in bad faith); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 895-97 (6th Cir. 2004) (same, where evidence showed that debtor notified trustee of claim, asked trustee to pursue the claim on behalf of the estate, moved for a status conference on the claim, and moved to substitute the trustee as plaintiff in the suit).

In *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004), the Sixth Circuit reversed the district court's application of judicial estoppel against plaintiffs who failed to disclose the claim in a prior bankruptcy proceeding. The court held that "evidence of an inadvertent omission of a claim in a previous bankruptcy proceeding is a reasonable and

appropriate factor to consider when analyzing judicial estoppel's applicability." *Id.* at 899. In its analysis, the court noted that

> [t]here is record evidence in the instant case that Plaintiffs made the court, and the Trustee, aware of the potential civil claim against Defendant before the bankruptcy action closed, although the claim was omitted from Plaintiffs' bankruptcy schedule form. Plaintiffs' counsel and the Trustee were in contact, with respect to the documentation regarding the claim against Defendant, prior to the filing of the Trustee's Final Report. When Plaintiffs' counsel could not confirm whether or not the Trustee intended to reconcile the civil claim through the bankruptcy proceeding, Plaintiffs attempted to resolve the issue through a court conference, which was eventually cancelled due to the filing of the Trustee's Final Report.
>
> The facts before this Court are more closely analogous to cases which have held the application of judicial estoppel to be an inappropriate resolution, rather than a necessary judicial measure to protect the court's interest. . . .
>
> The record established that Plaintiffs amended the bankruptcy schedules once, and attempted to amend it a second time, to finally place Defendant on the schedule as a creditor and potential asset. Defendant, however, provides no additional evidence that Plaintiffs demonstrated fraudulent intentions towards the court. Additionally, the record establishes that Plaintiffs put the court and the Trustee on notice through correspondence, motions, and status conference requests, thus supporting the argument that the claim's omission on the schedules was merely inadvertent, particularly since Plaintiffs' desire to pursue a liability claim against Defendant was a fact known by all parties involved.

*Id.* at 898-99. Accordingly, the Sixth Circuit found that the plaintiffs' omission was inadvertent and remanded the case back to the trial court. *Id.*

Conversely, the Sixth Circuit upheld the district court's application of judicial estoppel in *Kimberlin v. Dollar General Corp.*, 520 F. App'x 312 (6th Cir. 2013). On appeal, the plaintiff only challenged the mistake-or-inadvertence prong and disputed that she possessed motive or bad faith. *Id.* at 314. In support of her proposition, Kimberlin argued

> that insufficient time remained in the payment plan for the bankruptcy estate or her creditors to benefit from her disclosure. She emphasize[d] that 60 months is the maximum repayment period for a Chapter 13 plan, and that modifications to a confirmed plan can only occur before the completion of payments under such plan.

6

*Id.* at 315. Further, she contended "that only 41 days passed between her termination and the final payment in her 60-month plan, . . . it was not possible (practically) to 'liquidate her claim and incorporate the proceeds into a modification of her plan that would increase payments to creditors.'" *Id.* She also submitted a sworn statement to the court declaring that "[it] was never [her] intent to hide anything from the bankruptcy court." *Id.* The Sixth Circuit affirmed the application of judicial estoppel in her case, noting that the plaintiff failed to take any affirmative steps to notify the trustee or bankruptcy court of the omitted claim, and that her "affidavit alleging unintentional omission 'pale[d] in comparison' to the evidence of good faith presented in . . . *Eubanks*." *Id.*

In the instant matter, it is uncontested that Marr did not include the present claim against Defendant in her bankruptcy filing, despite filing for bankruptcy after she filed her administrative claim. (*See* D.E. 78-1 at 7.) Thus, Wygul contends judicial estoppel should prevent her from pursuing her current litigation. (D.E. 69-3 at 7-10.) Defendant asserts that the fact that Plaintiff-Intervenor filed an administrative claim against him as well as demanded he pay her money, proves that she "undoubtedly had knowledge of the facts giving rise to this claim as they occurred prior to her bankruptcy filing." (*Id.* at 9.) Further, he argues, Marr specifically considered whether to list this claim on her petition but then decided against it, and she allegedly "acknowledged in her deposition her motive to conceal the claims." (*Id.*) Wygul avers that Marr "has not and cannot offer evidence of good faith. She sought and obtained relief from the Bankruptcy Court without disclosing her claims in this case and specifically and intentionally omitted to list them, after consultation with her lawyer." (*Id.* at 10.)

Although Defendant rightfully emphasizes that Marr failed to include the present claim in her bankruptcy filing despite having already submitted her administrative grievance, he fails to acknowledge the numerous affirmative actions she has taken to rectify the omission. Initially, when Plaintiff-Intervenor filed for bankruptcy, she informed her bankruptcy attorney's paralegal about the fair housing complaint that she filed. (D.E. 76-3 at ¶¶ 35-37.) Although Marr failed to understand what some of the technical terms in the bankruptcy schedules meant, such as "administrative proceedings, contingent claims, and unliquidated claims," none of the terms were explained to her. (*Id.*) She also described this confusion during her deposition for this case. (D.E. 71 at 25-27, 166.) Once Plaintiff-Intervenor was informed by her attorneys in the present case that she was obligated to list the claim in her bankruptcy petition, she hired a bankruptcy attorney. (D.E. 78-1 at 8; *see* 76-3 at ¶¶ 45-47.) When that attorney did not take any action, she promptly employed new counsel, who helped reopen her bankruptcy case on December 1, 2015. (D.E. 76-3 at ¶¶ 45-47.) The HUD complaint and the current proceeding were then listed. (*Id.* at ¶ 47.) Subsequently, on April 7, 2016, Marr filed to substitute the Bankruptcy Trustee as the real party in interest pursuant to Federal Rule of Civil Procedure 25. (D.E. 65.) Defendant moved for summary judgment thirteen days later on April 20, 2016. (D.E. 69.) All of these steps were taken before Defendant brought the issue to the Court's attention.

Indeed, Defendant cites to *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420 (6th Cir. 2005), for the proposition that "[a] plaintiff may demonstrate an absence of bad faith where, prior to being caught, she takes prompt action to inform the trustee of her claims." (D.E. 69-3 at 10.) Wygul correctly notes that a debtor may not cure an omission only after it is challenged and still claim good faith. *See Tyler v. Fed. Express Corp.*, 420 F. Supp. 2d 849,

858-59 (W.D. Tenn. 2005); *see also In re Johnson*, 345 B.R. 816, 824 (Bankr. W.D. Mich. 2006). As evidenced by her reopening the bankruptcy case and filing for a party substitution, Marr did not wait until Wygul introduced the issue of judicial estoppel to correct her original omission. In *Lewis*, the Sixth Circuit highlighted that the plaintiff "never sought to amend her bankruptcy schedules, nor did she file a motion to make any other sort of attempt to inform the bankruptcy court of her [civil] action." *Lewis*, 141 F. App'x at 426. In the instant case, Marr began to attempt to correct her omission as soon as her current attorneys made her aware of her duty; she reopened her bankruptcy proceeding, listed both the HUD complaint and the current proceeding, and filed to substitute the Bankruptcy Trustee as the real party in interest. Plaintiff-Intervenor's corrective actions concerning her previous mistake demonstrate that judicial estoppel is inappropriate in this instance. *See Eubanks*, 385 F.3d at 895-97. Accordingly, Defendant's motion for summary judgment on this ground is DENIED.

Furthermore, it is well-established that "all legal or equitable interests of the debtor in property as of the commencement of the case are considered property of the bankruptcy estate." *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013). Thus, "only the bankruptcy trustee has standing to pursue pre-petition causes of action." *Id.* The Chapter 7 trustee then becomes the real party in interest for civil litigation. *See In re Bard*, 49 F. App'x 528, 529 (6th Cir. 2002) ("Upon conversion of the Chapter 13 bankruptcy proceeding into a Chapter 7 matter, the bankruptcy trustee became the real party-in-interest in the [plaintiffs'] suit against the [defendant]."). Accordingly, Marr's motion for substitution of Bankruptcy Trustee Michael Tabor as the real party in interest is hereby GRANTED.

2. Exemption Under 42 U.S.C. § 3603(b)

Next, Defendant asserts that 42 U.S.C. § 3603(b) exempts the property at issue from application of the FHA. (D.E. 69-3 at 10-11.) Subsection (b), entitled "Exemptions," establishes that

> [n]othing in section 3604 of this title (other than subsection (c)) shall apply to—
>
> (1) any single-family house sold or rented by an owner: *Provided*, That such private individual owner does not own more than three such single-family houses at any one time: *Provided further*, That in the case of the sale of any such single-family house by a private individual owner not residing in such house at the time of such sale or who was not the most recent resident of such house prior to such sale, the exemption granted by this subsection shall apply only with respect to one such sale within any twenty-four month period: *Provided further*, That such bona fide private individual owner does not own any interest in, nor is there owned or reserved on his behalf, under any express or voluntary agreement, title to or any right to all or a portion of the proceeds from the sale or rental of, more than three such single-family houses at any one time: *Provided further*, That after December 31, 1969, the sale or rental of any such single-family house shall be excepted from the application of this subchapter only if such house is sold or rented (A) without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person and (B) without the publication, posting or mailing, after notice, of any advertisement or written notice in violation of section 3604(c) of this title; but nothing in this proviso shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title.

42 U.S.C. § 3603(b).

Wygul argues that pursuant to § 3603(b), "the owner of a single family rental home must own more than three (3) such single family rental homes in order [] for liability to be imposed under the act on a defendant." (D.E. 69-3 at 12.) Defendant acknowledges that the owner of the home rented by Marr was his mother, Faye Wygul. (*Id.*) After she passed away, ownership was transferred to the Estate of Faye Wygul (the "Estate"). (*Id.*) As the Government notes, however, it is unquestioned that Defendant did not own the property at issue when Marr was renting it.

(D.E. 78-1 at 19.) Wygul stated in his deposition that he did not become the owner of the house until after the estate was closed in 2012; Marr's tenancy terminated in May of 2011. (D.E. 77 at 16-18.)

In *Michigan Protection & Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 342 (6th Cir. 1994), the Sixth Circuit explained that it interprets § 3603(b) "as excluding only those people who have some claim to proceeds of a sale because of their interest in the fee simple of the property." An administrative law judge overseeing a HUD claim put it more directly when she stated that "the exemption applies only to owners, and [the respondent] does not own the subject properly," thus he is unable to claim the exemption. *Garrett v. Maze*, H.U.D.A.L.J.: 10-M-015-FH4, 2011 WL 2201105, at *1 (May 25, 2011). Defendant fails to provide any law or precedent that supports his position that he is entitled to the exemption despite the fact he did not own the property in question until significantly after the relevant time period. Accordingly, Defendant's motion for summary judgment on this ground is DENIED.

### 3. 42 U.S.C. § 3603(a)

Wygul further insists that as 42 U.S.C. § 3603(a)(1) is not applicable to the housing that Marr rented, all claims must be dismissed. (D.E. 69-3 at 13.) Both the Government and Plaintiff-Intervenor concur with Defendant that the plain reading of subsection (a)(1) does not apply here because it only applies to housing owned or operated by the federal government or made available in whole or in part by government resources. (*See* D.E. 78-1 at 20; D.E. 76 at 13-14.) However, both parties highlight the fact that Wygul wholly ignores subsection (a)(2), which they contend does apply. (*See* D.E. 78-1 at 21; D.E. 76 at 14.)

Subsection (a)(2) of 42 U.S.C. § 3603 provides that

> [s]ubject to the provisions of subsection (b) of this section and section 3607 of this title, the prohibitions against discrimination in the sale or rental of housing set forth in section 3604 of this title shall apply: After December 31, 1968, to all dwellings covered by paragraph (1) and *to all other dwellings except as exempted by subsection (b)* of this section.

42 U.S.C. § 3603(a)(2) (emphasis added). As discussed *supra*, the exemptions established by subsection (b) do not apply to Defendant as he was not the owner of the dwelling during the requisite time frame. Accordingly, the FHA does apply to the property at issue, and thus, Defendant's motion for summary judgment on this ground is DENIED.

### 4. 42 U.S.C. §§ 3604 and 3617

Finally, Defendant avers that the claims of discrimination brought pursuant to §§ 3604(a)-(c) and 3617 fail as a matter of law and that Marr's lease was lawfully terminated for her failure to pay rent. (D.E. 69-3 at 15-19.) Section 3604 of the FHA states:

> [a]s made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> **(a)** To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> **(b)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
> **(c)** To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(a)-(c). Section 3617 states that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the

12

exercise or enjoyment of, any right granted or protected" by sections 3603, 3604, 3605, or 3606 of the FHA. 42 U.S.C. § 3617.

The Sixth Circuit has explained that "[i]n many ways the FHA, which comprised one piece of the Civil Rights Act of 1968, both tracks and builds upon Title VII of the Civil Rights Act of 1964, which prohibits discriminatory employment practices." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 537 (6th Cir. 2014). Indeed, "[b]oth Title VII and the FHA prohibit intentional discrimination, known as disparate treatment, as well as 'practices that are not intended to discriminate but in fact have a disproportionately adverse effect' on a protected class, known as disparate-impact claims." *Id.* The court noted that "much of [its] FHA jurisprudence is drawn from cases interpreting Title VII." *Id.*

It is well-established that the Sixth Circuit recognizes two forms of sexual harassment under Title VII: "(1) harassment that creates an offensive or hostile environment, and (2) quid pro quo harassment, where a supervisor demands sexual favors as a condition for . . . benefits." *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 628 (6th Cir. 2013). Similarly, "[i]llegal discrimination in housing on the basis of sex may take the form of treating one gender less favorably (disparate treatment) or . . . sexual harassment. Sexual harassment, in turn, may be analyzed as falling into either the 'quid pro quo' or 'hostile environment' varieties." *Walker v. Crawford*, No. 5:97-CV-1033, 1999 WL 33917846, at *9 (N.D. Ohio Sept. 16, 1999).[1] Applying Title VII rationale to the FHA, "a plaintiff may demonstrate that she was the victim of quid pro quo sexual harassment by showing that (1) she was subjected to unwelcome sexual

---

[1]It is widely accepted in courts throughout the country that sexual harassment is a form of sexual discrimination that may violate both § 3607 and § 3617. *See Hall v. Meadowood Ltd. P'ship*, 7 F. App'x 687 (9th Cir. 2001); *DiCenso v. Cisneros*, 96 F.3d 1004 (7th Cir. 1996); *Honce v. Vigil*, 1 F.3d 1085 (10th Cir. 1993); *Shallhammer v. Lewallen*, 770 F.2d 167 (6th Cir. 1985); *see also Brillhard v. Sharp*, No. 4:CV-07-1121, 2008 WL 2857713 (M.D. Penn. Jul. 21, 2008); *Robbins v. Am. Preferred Mgmt. Co., Inc.*, No. 5:05-CV-182, 2007 WL 2728746 (W.D. Mich. Sept. 17, 2007); *Walker*, 1999 WL 33917846.

conduct . . ., and (2) the defendant used her submission to or rejection of the proscribed conduct as a factor in an adverse action." *Robbins*, 2007 WL 2728746, at *9; *see Souther v. Posen Constr., Inc.*, 523 F. App'x 352, 354 (6th Cir. 2013) (For a Title VII quid pro quo claim, "a plaintiff must prove, as relevant here, that he or she 'was subjected to unwelcome[] sexual harassment in the form of sexual advances or requests for sexual favors' and that submitting to these demands or advances was an express or implied condition for receiving job benefits, or that refusing to submit resulted in a tangible job detriment."). To establish a claim of hostile environment sexual harassment, a plaintiff must demonstrate the following:

> (1) [she] belonged to a protected group; (2) [she] was subject to communication or conduct on the basis of sex; (3) [she] was subjected to unwelcome sexual conduct or communication; (4) the unwelcome conduct or communication was intended to or in fact did substantially interfere with the individual's environment or created an intimidating hostile or offensive environment; and (5) respondeat superior.

*Robbins*, 2007 WL 2728746, at *9.

a.  § 3604(a)

Section 3604(a) of the FHA makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). It is well-established that "the FHA, and the policies reflected therein, are to be construed broadly." *Fair Hous. Advocates Ass'n, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626, 636 (6th Cir. 2000): *see Michigan Protection & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 344 (6th Cir. 1994) ("Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class."). "In accordance with the doctrine established in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984), [the court should] defer to Department of

Housing and Urban Development regulations to the extent they are 'a permissible construction of the statute.'" *Campbell v. Robb*, 162 F. App'x 460, 466 (6th Cir. 2006) (quoting *Chevron*, 467 U.S. at 842-44); *see also Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644, 646 (6th Cir. 1991) (noting that HUD is the agency charged with implementing the FHA). HUD fair housing regulations instruct that "[e]victing tenants because of their . . . sex" is prohibited under § 3604(a). 24 C.F.R. § 100.60(b)(5); *see Baumgardener v. Holley*, 960 F.2d 572, 576 (6th Cir. 1992) (explaining that regulations issued under § 3604 under 24 C.F.R. § 100.60 provide further description of prohibited conduct); *Lowman v. Platinum Prop. Mgmt. Servs., Inc.*, No. 1:15-CV-02116-ELR, 2016 WL 1746926, at *5 (N.D. Ga Feb. 23, 2016) ("As other courts have found . . . § 100.60 does provide a list of discriminatory actions that give rise to a violation of § 3604(a).")

Both the Government and Marr contend in their respective complaints that Defendant violated § 3604(a) by making the house otherwise unavailable to her on the basis of sex. (*See* D.E. 78-1 at 26-27; D.E. 76 at 17.) Specifically, they assert that the property was made unavailable by making a "*quid pro quo* sexual demand that Marr allow him to take photographs of her nude or partially clothed and then evicting her and her children when she refused." (D.E. 78-1 at 26.) Plaintiff alleges that after Marr began to fall behind on her rent, "Wygul demanded that she pose nude for him, offering to forgive her rent for the month if she did so." (*Id.* at 5.) In her deposition, Marr testified that after she refused to pose for him, "he told [her] [that she] would have [her] eviction notice the next day." (*Id.*)

In his motion for summary judgment, Wygul focuses solely on a disparate impact theory of discrimination based on sex. (D.E. 69-3 at 15-16.) Moreover, Defendant limits his argument to only the issue of applying for and being rejected from renting the property. (*Id.* at 16.) He

15

fails to address the issue of the rental house being rendered unavailable because of quid pro quo sexual demands and evicting Marr upon her refusal. Plaintiff and Plaintiff-Intervenor described Defendant's alleged requests for sexual favors in detail and put into question the actual basis for Marr's eviction, which made the house unavailable to her and her children. As Wygul did not dispute these claims, he has failed to meet his burden of demonstrating an absence of genuine dispute as to a material fact. *See Automated Solutions Corp.*, 756 F.3d at 520. Accordingly, Defendant's motion for summary judgment on this claim is DENIED.

### b.  § 3604(b)

Section 3604(b) of the FHA makes it illegal to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). HUD fair housing regulations concerning this law instruct that prohibited actions under this section include "denying or limiting services or facilities in connection with the sale or rental of a dwelling, because a person failed or refused to provide sexual favors." 24 C.F.R. § 100.62(b)(5). Section 3604(b) "applies to post-access conduct," extending to discriminatory behavior against renters once housing has been acquired and including the denial of continued rental of the property based on discrimination. *Guevara v. UHM Props., Inc.*, No. 2:11-cv-2339-SHL-tmp, 2014 WL 5488918, at *6 (W.D. Tenn. Oct. 29, 2014); *see United States v. Koch*, 352 F. Supp. 2d 970, 976 (D. Neb. 2004) ("it is difficult to imagine a privilege that flows more naturally from the purchase or rental of a dwelling than the privilege of residing therein").

Plaintiff and Plaintiff-Intervenor contend that Wygul's creation of a hostile housing environment based upon sex and quid pro quo sexual demands in exchange for continued

16

tenancy violated § 3604(b). In addition to his numerous requests that Marr pose nude for him instead of paying rent, he "began a campaign of surveillance of [her] from his home on the hill above the subject property, once texting her 'are you ever going to stay home?'" (D.E. 78-1 at 5.) In total, "Wygul sent Ms. Marr more than 40 unwelcome, sexually-offensive text messages during her three-month tenancy, sometimes as many as six or seven over the course of a few minutes." (*Id.*) These text messages included exceedingly sexually explicit requests for photographs and actual sexual contact. (*Id.* at 4-5.) Due to the harassment, Marr felt "scared, humiliated, and violated," and chose to forego staying at the rental property—instead staying with her children at their grandmother's house. (*Id.* at 5.) In early April, Defendant sent her the following text message: "Make you a deal for the rent. Let me take as many [sexally-explicit] photographs as I want within a period of one hour today or tomorrow, and the rent is gone for the month." (*Id.*) After Marr refused, Wygul responded: "You are something else. You will have your 30-day [eviction] letter tomorrow." (*Id.* at 6.)

Rather than dispute these facts or the claims of sexual harassment, Defendant once again focused his argument on a discrimination theory based on disparate treatment and claimed that the lease was terminated because of failure to pay rent. (D.E. 69-3 at 17.) Viewing the facts in light most favorable to the nonmoving parties, a genuine issue of material fact exists as to whether Wygul discriminated against Marr based on sex in violation of § 3604(b). *See JP Morgan Chase Bank, N.A.*, 750 F.3d at 578. Accordingly, Defendant's motion for summary judgment on this claim is DENIED.

c. § 3604(c)

Section 3604(c) of the FHA renders it unlawful

[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that

indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c). As the Sixth Circuit has noted, "the section 'appl[ies] to all written or oral . . . statements by a person engaged in the . . . rental of a dwelling.'" *Campbell*, 162 F. App'x at 466 (quoting 24 C.F.R. § 100.75(b)). HUD regulations note that "[d]iscriminatory . . . statements . . . include, but are not limited to: (2) expressing to . . . any other persons a preference for or limitation on any purchaser or renter because of . . . sex . . . of such persons." 24 C.F.R. § 100.75(c). It is well-established that sexual harassment is a form of discrimination based on sex. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) ("a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment"); *Souther*, 523 F. App'x at 354 ("*quid pro quo* sexual harassment . . . is anchored in an employer's sexually discriminatory behavior which compels an employee to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments.")

Wygul attempts again to apply a disparate impact theory of discrimination to the case. (D.E. 78-1.) He fails to address the issue of quid pro quo sexual harassment, or his eviction of her immediately following Marr's refusal to allow him to take sexually explicit pictures of her. It is clear Defendant was engaged with the rental of the property at issue. After Marr refused to pose nude for him rather than paying rent, Wygul immediately informed her that he would be sending her an eviction notice. (D.E. 78-1 at 30.) A reasonable jury could find that Defendant's oral statements to Marr expressed a limitation and/or discrimination based upon sex or an intention to make such limitation or discrimination in violation of § 3604(c). Thus, Wygul has not met his burden of showing an absence of genuine dispute as to a material fact. *See*

18

*Automated Solutions Corp.*, 756 F.3d at 520. Accordingly, Defendant's motion for summary judgment on this claim is DENIED.

### d. § 3617

Finally, § 3617 states that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by sections 3603, 3604, 3605, or 3606 of the FHA. 42 U.S.C. § 3617. The Sixth Circuit has explained that "[t]his section reach[es] all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *Campbell*, 162 F. App'x at 473; *see Babin*, 18 F.3d at 347. Applicable HUD guidelines note that unlawful conduct under this section includes "[t]hreatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of the . . . sex . . . of such persons." 24 C.F.R. § 100.40(c)(2).

Defendant asserts that because § 3617 "does not protect the rights of a non-paying tenant to continue to occupy a home after having failed to pay," he did not violate this section by serving Marr with an eviction notice. (D.E. 69-3 at 18.) Wygul fails to address Plaintiff and Plaintiff-Intervenor's claims of hostile environment sexual harassment or quid pro quo sexual harassment. Facts alleged by Plaintiff include that Defendant sent a number of unwelcome, sexually explicit text messages to Marr, began surveilling her from his house and harassing her for sexual favors, and evicting her upon her refusal to pose nude for him. (D.E. 78-1 at 4-6.) A reasonable jury could conclude that Wygul's behavior intimidated and/or interfered with Marr's enjoyment of the dwelling she was renting. Accordingly, Defendant's motion for summary judgment on this claim is DENIED.

*Conclusion*

Based upon the foregoing reasons, Defendant's motion is DENIED.

IT IS SO ORDERED this 2nd day of August 2016.

                                          s/ J. DANIEL BREEN
                                          CHIEF UNITED STATES DISTRICT JUDGE